**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

TOMEKA BRIGHT, GRETCHEN
STANSBERRY, SABRINA KINSLOW, and
DONNA FURQUAN,

       Plaintiffs,

vs.

MENTAL HEALTH RESOURCE CENTER,         Case No. 3:10-cv-427-J-37TEM
INC.,

       Defendant/Counterclaim-Plaintiff.

vs.

TOMEKA BRIGHT,

       Counterclaim-Defendant.
_____

## ORDER

This cause is before the Court on the parties' Joint Motion for Approval of Settlement and Dismissal with Prejudice (Doc. No. 25), filed August 11, 2011.

## BACKGROUND

Mental Health Resource Center, Inc. ("MHRC") is a non-profit organization which provides social services to the community pursuant to contracts with the Florida Department of Children and Family Services. (Doc. No. 1, ¶ 16.) Plaintiffs were "case managers" and "Family Service Counselors" for MHRC's dependancy and Family Assessment Support Team ("FAST") programs. (Doc. No. 1, ¶¶ 5-10, 17-20.) In the complaint, which was brought as a collective action pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, Plaintiffs alleged they were non-exempt employees of MHRC who were not paid overtime wages to which they were entitled. (*Id.*)

In response, MHRC contended that the FLSA was not applicable because it was not an enterprise engaged in interstate commerce.[1]  (Doc. No. 7.)  As the issue of enterprise coverage was potentially dispositive, the Court ordered the parties conduct discovery focused on this issue and set a respective dispositive motion deadline.  (Doc. No. 13.) Following discovery, MHRC moved for summary judgment on the absence of enterprise coverage.  (Doc. No. 14.)  Plaintiffs conceded MHRC was not an enterprise within the meaning of the FLSA.  (Doc. No. 15.)  Plaintiffs also dropped their request for a collective action and, thereafter, sought to recover only their own overtime wages.[2]  (*Id.*)

Subsequently, MHRC moved, and was granted, leave to amend its answer to assert a counterclaim against Plaintiff Tomeka Bright.  (Doc. Nos. 22, 23.)  MHRC claimed that Bright had falsified certain travel vouchers during her time as a family service counselor, thereby fraudulently obtaining in excess of $15,000 in reimbursements from MHRC.  (Doc. No. 24, ¶¶ 9-19.)  MHRC alleged that when it learned of Bright's wrongful conduct, it terminated her employment.  (*Id.* ¶ 20.) MHRC sought to recover the reimbursements paid to Bright.  (*Id.* ¶¶ 22-36.)

---

[1]  In order for the FLSA to apply, either the individual employee must be engaged in interstate commerce (individual coverage) or the defendant employer must be an enterprise engaged in interstate commerce (enterprise coverage).  The FLSA applies in an individual coverage situation where a plaintiff was (1) engaged in commerce or (2) engaged in the production of goods for commerce.  *See, e.g.*, *Thorne v. All Restoration Servs., Inc.*, 448 F.3d 1264, 1266 (11th Cir. 2006).  Enterprise coverage under the FLSA is present where an employer: (1) "has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person"; and (2) has at least $500,000 of "annual gross volume of sales made or business done." 29 U.S.C. § 203(s)(1)(A).

[2]  Plaintiff Donna Furquan did not join this action until May 24, 2010, when she filed a consent to "opt-in" to the collective action.  (Doc. No. 3.)

2

The parties reached an amicable settlement and jointly moved for the Court's approval. (Doc. No. 25.)  In their Motion, the parties stipulated that Plaintiffs and MHRC had a bona fide dispute as to whether Plaintiffs were regularly engaged in interstate commerce when acting "case managers" and "Family Service Counselors" for MHRC. (*Id.* at 2-3.)  The parties also stipulated that they had a bona fide dispute as to whether Plaintiffs were professionals exempt from the FLSA's overtime provisions. (*Id.* at 3.)  The parties supplied detailed factual contentions concerning these disputes. (*Id.* at 3-4.)  The parties did not initially submit the proposed settlement agreement for the Court's approval. (*Id.*)  Rather, they requested that the Court review the agreement *in camera*, approve it, and dismiss this action in its entirety with prejudice. (*Id.*)

The Court referred the parties' Motion to the Magistrate Judge for a report and recommendation as to whether the proposed settlement was a fair and reasonable resolution of a bona fide dispute. (*See* Doc. No. 26.)  The Magistrate Judge agreed to review the proposed settlement agreements *in camera*, and directed the parties to submit copies for review. (Doc. No. 31, p. 3.)  After reviewing the settlement agreements, the Magistrate Judge had "concerns that possibly would preclude [him] from recommending the District Court accept the agreements as fair and reasonable resolutions of Plaintiffs' bona fide disputes" with MHRC. (*Id.*)  The Magistrate Judge set, and subsequently held, a hearing to advise the parties of his concerns and to hear argument from counsel. (*Id.* at 2-3; *see also* Doc. Nos. 28, 29.)

Ultimately, the Magistrate Judge recommended that this Court decline to approve the settlement agreement as a whole. (*See* Doc. No. 31.)  The Magistrate Judge found that the compromise reached by the parties was fair and reasonable; however, he took issue

3

with the fact that the settlement agreements were not filed in the public record and that they contained a broad general release of claims.  (*Id.* at 8-9.)

MHRC objected to the Magistrate Judge's recommendation.  (Doc. No. 32.)

## APPLICABLE STANDARDS

MHRC objected to portions of the Magistrate Judge's recommended final disposition. Therefore, this Court must determine *de novo* every portion of the recommended disposition to which an objection was properly made.  Fed. R. Civ. P. 72(3); *see also* 28 U.S.C. § 636(b)(1).  This Court has the "widest discretion" as to its consideration of the recommendations of the Magistrate Judge, *Williams v. McNeil*, 557 F.3d 1287, 1291 (11th Cir. 2009), and it "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(3); *see also* Local Rule 6.02.  When reviewing an objection, this Court may consider arguments not presented to the Magistrate Judge, *Stephens v. Tolbert*, 471 F.3d 1173, 1174 (11th Cir. 2006), or it may decline to consider such arguments, *Williams*, 557 F.3d at 1291.[3]

## DISCUSSION

The parties have presented a proposed settlement agreement to the Court for its approval.  They did so because the FLSA requires it.  There are only two ways in which FLSA wages claims may be settled or compromised: (1) under the supervision of the Department of Labor, or (2) by a stipulated judgment entered by a court of competent

---

[3] Federal Rule of Civil Procedure 72(b)(2) directs an objecting party to "promptly arrange for transcribing the record, or whatever portions of it the parties agree to or the magistrate judge considers sufficient."  MHRC did file a transcript of the hearing held by the Magistrate Judge in this case, which the Court takes to mean MHRC believes it is not necessary for the Court to review a transcript of the hearing.

jurisdiction once that court determines the settlement is fair and reasonable. *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352-53 (11th Cir. 1982).

In its objection, MHRC argues that the Magistrate Judge erred in recommending the settlement agreements not be approved because they were not filed in the public record.[4] This objection ignores the public's right of access to court proceedings and judicial documents.

There are few principles more entrenched in our society than the understanding that the public is free to view the daily activities of the courts. *See, e.g.*, *Romero v. Drummond Co.*, 480 F.3d 1234, 1245 (11th Cir. 2007); *see also Nixon v. Warner Comm'ns, Inc.*, 435 U.S. 589, 597 (1978). Where the media attends trials and hearings, publicity and public interest often follows. In such cases, the media often acts as an advocate for the public in the courtroom during the proceedings. Not all cases garner media attention, however.

In most cases, however, the public is an absent guest in the courtroom without an advocate. The Eleventh Circuit recognizes this, and has instructed this Court to protect the public's right to access to judicial proceedings and records.[5] *See Wilson v. Am. Motors*

_____

[4] MHRC posits that this objection is moot in view of its filing the agreements in the public record. The Court will address in nonetheless because, as the Eleventh Circuit has recognized in nearly identical circumstances, the sealing and unsealing of records presents a controversy capable of repetition yet evading review. *United States v. Valenti*, 987 F.2d 708, 714 (11th Cir. 1993).

[5] The public's right to access flows from two sources, the Constitution and the common law. The Constitutional right of access is derived from the First Amendment. *See, e.g.*, *Globe Newspaper Co. v. Superior Court for the Cnty. of Norfolk*, 457 U.S. 596 (1982) (reaffirming the plurality opinion in Richmond Newspapers, Inc. v. Virginia, 448 U.S. 555 (1980) that there is a qualified First Amendment right to an open criminal trial). While the Constitutional right to access is most firmly rooted with regard to criminal trials, it extends to only certain civil proceedings, *see Newman v. Graddick*, 696 F.2d 796, 801-02 (11th Cir. 1983), and only to a narrow range of judicial records and documents, *Rushford v. New Yorker Magazine, Inc.*, 846 F.2d 249, 253 (4th Cir. 1988).

*Corp.*, 759 F.2d 1568, 1571 (11th Cir. 1985) ("The district court must keep in mind the rights of a third party-the public, 'if the public is to appreciate fully the often significant events at issue in public litigation and the workings of the legal system.' ").  Thus, while the Court is tasked in this case to scrutinize the settlement of Plaintiffs' FLSA claims, the Court must also ensure that it protects the interests of the public in the judicial process.[6]

The agreements are documents proffered by the parties to support the Court's final adjudication of Plaintiff's FLSA claims.  In the Eleventh Circuit, such documents are judicial

------

The common law right of access applies to a broader range of judicial records and documents in most circuits.  *See* T.S. Ellis, III, *Systematic Justice: Sealing, Judicial Transparency and Judicial Independence*, 53 Vill. L. Rev. 939, 944 (2008).  The Eleventh Circuit, however, appears to have limited the common law right of access to "material filed in connection with pretrial motions that require judicial resolution of the merits."  *Chicago Tribune Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1312 (11th Cir. 2001).  To these documents, the Court must apply a "heightened standard," which is the same standard applicable to the Constitutional right to access.  *See id.*

[6]   As U.S. District Judge T. S. Ellis, III, noted in a recent law review article,

what judges do–the process and product of adjudication–must be largely open to public scrutiny, else risk giving rise to a threat to judicial independence.  Secret proceedings, including unwarranted or excessive sealing of court records, engender suspicion, mistrust and a lack of confidence in the judicial process and, if not rare and well understood as necessary, such proceedings will likely lead to attempts to limit judicial authority and independence.

Ellis, *supra* note 5, at 939-40.  These observations apply especially to those cases which do not attract the public interest at the time they are ongoing.  The public may desire to look back through the court's records to detect trends or highlight judicial practices.  The routine sealing of court records prevents this form of oversight.

Moreover, those interested in public policy may also benefit from the information available in court files, which individually may not amount to much but cumulatively may be valuable in a debate on issues of public concern, such as the payment of wages (or failure to pay wages) by employers.  The Court encourages anyone who is interested to review the more than 6,700 FLSA cases filed in the Middle District of Florida since the turn of the century to see how the judges of this Court have struggled to handle FLSA claims in a manner that is just, speedy, and inexpensive.

records which the public may inspect and copy.[7]  *Brown v. Advantage Eng'g, Inc.*, 960 F.2d

1013, 1014-16 (11th Cir. 1992).   The Court may only disregard the presumption of

---

[7]  Settlements of FLSA claims are not enforceable unless and until the Court agrees to reduce them to a judgment, which is of course a "final determination of the rights and obligations of the parties in a case." Bryan A. Garner, Black's Law Dictionary 918 (9th ed. 2009).  Thus, the parties' motion to approve the settlement agreements asks this Court to adjudicate Plaintiff's claims.   The public's right of access applies because of the adjudicative nature of the parties' request.   *See Chicago Tribune Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1312 (11th Cir. 2001); *Brown v. Advantage Eng'g, Inc.*, 960 F.2d 1013, 1014-16 (11th Cir. 1992); *Wilson v. Am. Motors Corp.*, 759 F.2d 1568 (11th Cir. 1985); *see also Leucadia, Inc. v. Applied Extrusion Techs., Inc.*, 998 F.2d 157, 164 (3d Cir. 1993) (applying the right to all "pretrial motions of a nondiscovery nature, whether preliminary or dispositive, and the material filed in connection therewith."); *Rushford v. New Yorker Magazine, Inc.*, 846 F.2d 249, 253 (4th Cir. 1988) (applying right to material filed in support of summary judgment); *In re Cont'l Ill. Sec. Litig.*, 732 F.2d 1302, 1309 (7th Cir. 1984) (applying the Constitutional right of access to documents filed in support of a motion which "was designed to (and did) result in the dismissal of claims against several defendants" in a civil case); *Joy v. North*, 692 F.2d 880, 893 (2d Cir. 1982) (finding special litigation committee reports used in the adjudication stages of derivative litigation should be made available for public inspection unless exceptional circumstances require confidentiality);  *Miles v. Ruby Tuesday, Inc.*, 799 F. Supp. 2d 618 (E.D. Va. 2011) (same conclusion in an FLSA case); *Dees v. Hydradry, Inc.*, 706 F. Supp. 2d 1227, 1242 (M.D. Fla. 2010) (Merryday, J.) ("[A] confidentiality provision furthers resolution of no bona fide dispute between the parties; rather, compelled silence unreasonably frustrates implementation of the 'private-public' rights granted by the FLSA and thwarts Congress's intent to ensure widespread compliance with the statute."); *Prater v. Commerce Equities Mgmt. Co., Inc.*, No. H-07-2349, 2008 WL 5140045, at *9-10 (S.D. Tex. Dec. 8, 2008) (Rosenthal, J.) ("The fact that the settlement agreement contains a confidentiality provision is an insufficient interest to overcome the presumption that an approved FLSA settlement agreement is a judicial record, open to the public."); *Perry v. Nat'l City Bank*, Case No. 05-cv-891, 2008 WL 427771 (S.D. Ill. Feb. 14, 2008) (Herndon, C.J.) ("Given the nature of the FLSA suit . . . the Court finds it important for the settlement to be made accessible to the public . . . ."); *Bartelloni v. Decastro*, No. 05-80910, 2007 WL 2155646 (S.D. Fla. July 26, 2007) (Cohn, J.) (confidentiality provision in FLSA settlement was insufficient reason to seal settlement agreement); *West v. First Franklin Fin. Corp., C.A.*, No. 06-2064, 2007 U.S. Dist. LEXIS 30963, at *3 (D. Kan. Apr. 25, 2007) (Vratil, J.) (rejecting the parties' argument that "the confidentiality of the awards is a material element of the [FLSA] settlement agreement"); *Stalnaker v. Novar Corp.*, 293 F. Supp. 2d 1260, 1264 (M.D. Ala. 2003) (Thompson, J.) ("Absent some compelling reason, the sealing from public scrutiny of FLSA agreements between employees and employers would thwart the public's independent interest in assuring that employees' wages are fair and thus do not endanger the national health and well-being.").

openness where there is a compelling governmental interest, and may only do so in a manner that is narrowly tailored to protect that interest. *Id.* In this calculus, it "is immaterial whether the sealing of the record is an integral part of a negotiated settlement between the parties, even if the settlement comes with the court's active encouragement," because once "a matter is brought before a court for resolution, it is no longer solely the parties' case, but also the public's case." *Id.* at 1016.

The reason advanced by the parties in this case–"to preserve the confidentiality of the monetary amounts of the settlements"–is not a compelling reason for the sealing of the FLSA settlement agreements.  In fact, this reason has been squarely rejected by the Eleventh Circuit, which noted, in similar circumstances:

> There is no question that courts should encourage settlements.  However, the payment of money to an injured party is simply not 'a compelling governmental interest' legally recognizable or even entitled to consideration in deciding whether or not to seal a record.  We feel certain that many parties to lawsuits would be willing to bargain (with the adverse party and the court) for the sealing of records after listening to or observing damaging testimony and evidence.  Such suppression of public records cannot be authorized.

*Wilson*, 759 F.2d at 1571 n.4.  Since it has not shown a compelling reason for the sealing of the settlement agreements, the Court overrules Defendant's objection to the Magistrate Judge's report and recommendation on this issue.

In its objection, MHRC also argues that the Magistrate Judge erred in rejecting the overly broad general releases not be approved in their entirety because the agreement contain overbroad general releases.  MHRC contends that the case used by the Magistrate Judge to support his recommendation, *Moreno v. Regions Bank*, 729 F. Supp. 2d 1346 (M.D. Fla. 2010), was wrongly decided and incorrectly applied in this case.  In *Moreno*, U.S. District Judge Steven Merryday concluded releases of all claims are "side-deals" in which

employers extract in exchange for money that is unconditionally owed to the employee. *See id.* at 1350-52. Such side deals, reasons Judge Merryday, are unfair because an employer is not entitled to use an FLSA claim to leverage a release from liability unconnected to the FLSA." *Id.* at 1352. This is so because in FLSA cases:

> An employee seeking to vindicate his FLSA rights often desperately needs his wages, and both the employee and the employer want promptly to resolve the matter. In a claim for unpaid wages, each party estimates the number of hours worked and the plaintiff's wage (i.e., establishes a range of recovery), and the court evaluates the relative strength of the parties' legal argument asserted in the particular case. However, in an FLSA action, neither party typically attempts to value the claims not asserted by the pleadings but within the scope of a pervasive release-that is, those "known and unknown," or "past, present, and future," or "statutory or common law," or other claims included among the boiler plate, but encompassing, terms unfailingly folded into the typical general release. Absent some knowledge of the value of the released claims, the fairness of the compromise remains indeterminate.

*Id.* at 1351-52 (footnotes and citations omitted).

This Court agrees with Judge Merryday. Pervasive, overly broad releases have no place in settlements of most FLSA claims. The FLSA requires employers to pay, unconditionally, a worker's wages. Employers cannot use the settlement of FLSA claims to extract a general release of claims before paying over the wages. This is unfair, and it provides employers with a windfall should some unknown claim accrue to the employee at a later time. Further, in the typical FLSA case, the indeterminate nature of general releases also prevents the Court from being able to evaluate the claims that have been waived by employees, thereby making a fairness determination difficult if not impossible.

In this case, all of the Plaintiffs except Tomeka Bright are involved in a "plain vanilla" FLSA case raising only FLSA claims against MHRC. As to those Plaintiffs, the Court determines the general releases in the agreements are unfair and unacceptable. The Court

finds, like the Magistrate Judge, the remaining terms of the agreements are fair, especially considering the serious legal defense raised by MHRC and the evidentiary burdens faced by Plaintiffs.  However, the Court cannot tell from the record whether the general releases were material to the settlement of these Plaintiffs' claims.  Rather than disapproving of these settlements, the Court will permit the parties to confer and notify the Court whether they will agree to omit the general release from these settlement agreements.

As to the settlement agreement between Plaintiff Tomeka Bright and MHRC, the Court finds it is a fair and reasonable resolution to their claims and counterclaims.  Unlike the other Plaintiffs, the dispute between Bright and MHRC goes beyond the FLSA claims. MHRC has asserted numerous counterclaims against Bright, and a settlement must necessarily address all of the parties claims.  MHRC's willingness to forego its claims against Bright provides the additional justification needed to support the inclusion of a general release in that settlement agreement.[8]

The Court, therefore, adopts the Magistrate Judge's recommendation regarding the general releases except as to Plaintiff Tomeka Bright.  The Court also adopts the Magistrate Judge's recommendation regarding the fairness of the remaining provisions of the settlement agreements.  The Court does not adopt the Magistrate Judge's recommendation to find the agreements fair and reasonable yet decline to approve the settlement agreement as a whole.  Rather, the Court will take the parties' Motion under consideration.  The parties shall notify the Court whether they agree to omit the general

_____

[8]  The Court is also satisfied that Bright and MHRC, as well as counsel, have thoroughly investigated the circumstances surrounding Bright's employment, which assures the Court that the general release in her settlement is not create an imputed discount for her FLSA claim.  *See Robertson v. Ther-Rx Corp.*, No. 2:09cv1010, 2011 WL 1810193, at *2 (M.D. Ala. May 12, 2011).

release from the remaining settlement agreements as directed below.

**CONCLUSION**

In view of the foregoing, it is hereby **ORDERED**:

1.      Defendant's objections to the Report and Recommendation (Doc. No. 32) are **OVERRULED** and the Report and Recommendation (Doc. No. 31) of the Magistrate Judge is **ADOPTED** as the opinion of the Court except as otherwise indicated in this Order.

2.      The parties' Joint Motion for Approval of Settlement and Dismissal with Prejudice (Doc. No. 25) is **GRANTED IN PART**.  The Motion is granted to the extent it seeks judicial approval of the settlement of Plaintiff Tomeka Bright's claims against Defendant and Defendant's counterclaims against Plaintiff Tomeka Bright.  The Motion is **TAKEN UNDER ADVISEMENT** as to the remaining settlement agreements.

3.      The parties shall, in a joint filing of no more than 5 pages, notify the Court on or before March 21, 2012, whether they will agree to omit the general release from the remaining settlement agreements.  If not, the filing shall also identify what discovery remains to be completed as well as a proposed schedule for such discovery and trial.

**DONE AND ORDERED** in Chambers in Jacksonville, Florida, on March 14, 2012.

ROY B. DALTON JR.
United States District Judge

Copies:

counsel of record